**NATIONAL CORN GROWERS ASSOCIATION, New Energy Company of Indiana, Archer Daniels Midland Company, Ohio Farm Bureau Federation and A.E. Staley Manufacturing Company, Plaintiffs,**

v.

**James A. BAKER III, Secretary, United States Department of the Treasury, John M. Walker, Jr., Assistant Secretary, United States Department of the Treasury, William Von Raab, Commissioner, United States Customs Service, and United States of America, Defendants,**

and

**RAJ Chemicals, Inc., Certified Oil Company and Citicorp International Trading Company, Inc., Defendant-Intervenors.**

No. 85–08–01151.

United States Court of International Trade.

Aug. 4, 1986.

Williams & Connolly, Aubrey M. Daniel, III, Stephen L. Urbanczyk, Manley W. Roberts, Robert W. Hamilton, and William R. Murray, Jr., Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Kenneth N. Wolf, New York City, for defendants.

Spriggs, Bode & Hollingsworth, William H. Bode, Joseph L. Nellis, Donald W. Fowler, Mark J. Riedy, and Bruce J. Berger, Washington, D.C., for defendant-intervenor RAJ Chemicals, Inc.

Wilmer, Cutler & Pickering, A. Douglas Melamed, Robert C. Cassidy, Jr., and Debo-

rah M. Levy, Washington, D.C., for defendant-intervenor Citicorp Intern. Trading Co., Inc.

## MEMORANDUM OPINION

RE, Chief Judge:

Defendant-intervenor RAJ Chemicals, Inc., (RAJ) moves for reassignment of this action to a three-judge panel to rehear the decision of a single-judge court. Since the court has concluded that the ultimate resolution of the issues presented in this case can be determined most expeditiously by direct appeal to the Court of Appeals for the Federal Circuit, the motion is denied.

### Background

Plaintiffs, who represent the domestic ethanol industry, on August 29, 1985, commenced this action challenging the Customs Service's decision to classify certain imported ethanol blends from Brazil under item 432.10 of the Tariff Schedules of the United States (TSUS) at a duty rate of 5 per centum ad valorem. Plaintiffs protested the classification of the imported ethanol products, and contended that they should properly be classified under items 427.88 and 901.50, TSUS at a duty rate of 3 per centum ad valorem, plus 60 cents per gallon. The action was assigned to a single-judge court pursuant to 28 U.S.C. § 253(c).

On September 9, 1985, plaintiffs moved for a temporary restraining order and preliminary injunction against the Customs Service, *inter alia,* to delay the liquidation of imports of ethanol mixtures entered after August 8, 1985. These motions were denied by a single-judge court. *See* 9 CIT 468, Slip Op. 85–98 (Sept. 20, 1985). Plaintiffs later renewed their motion for a preliminary injunction against liquidation of the entries of these ethanol blends. This motion was denied by a single-judge court. *See* 9 CIT ——, Slip Op. 85–105 (Oct. 9, 1985). Plaintiffs' motion for a rehearing of this decision was also denied. *See* 9 CIT ——, 623 F.Supp. 1262 (1985).

On November 15, 1985, the Customs Service liquidated an entry of ethanol blends imported by defendant-intervenor RAJ Chemicals, Inc. under item 432.10, TSUS. The court was advised of this fact by counsel for RAJ. Several other entries of ethanol blends, imported by defendant-intervenor Citicorp International Trading Company, Inc. (Citicorp), were also liquidated prior to judgment.

On May 22, 1986, the single-judge court issued an opinion and an accompanying judgment order, rendering judgment for plaintiffs. *See* 10 CIT ——, Slip Op. 86–55 (May 22, 1986). The court found that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i), and that plaintiffs had stated a valid cause of action under the Administrative Procedure Act. In granting relief, the court ordered RAJ to "remit to the United States of America within thirty (30) days of the date hereof duties equal to the rate provided for under item 427.88 and 901.50, TSUS, on any entries ... which have already been liquidated at a different rate of duty." Citicorp also was ordered to remit to the United States additional duties on entries already liquidated. The judgment will require RAJ to pay approximately 3.5 million dollars in additional duty, and Citicorp approximately 11 million dollars additional duty.

RAJ contends that this portion of the judgment which ordered the payment of additional duties to the United States is contrary to law. It contends that the court's order is in effect the granting of a direct money judgment for duties entered after liquidation has become final, and that this portion of the judgment constitutes the special circumstances which require reassignment and rehearing before a three-judge panel.

Plaintiffs oppose the motion for reassignment. The federal government defendants agree with RAJ's position that the portion of the judgment which grants a direct money judgment against the importers is contrary to law. Nevertheless, while "recogniz[ing] that assignment of this action to a three-judge panel is ultimately within the

discretion of the Chief Judge," the government opposes the assignment of the case to a three-judge panel at this stage of the litigation. Defendant-intervenor Citicorp has also moved for rehearing, but takes no position on the motion for reassignment to a three-judge panel.

RAJ, while reserving its rights as to other issues decided in this litigation, bases its motion for reassignment and rehearing before a three-judge panel solely on the issue of the illegality of a money judgment against a private party in favor of the United States under the circumstances presented. RAJ maintains that Customs may not, with certain statutory exceptions not relevant here, reliquidate merchandise after the 90 days allowed for voluntary reliquidation has elapsed. *See* 19 U.S.C. §§ 1501, 1514. Furthermore, RAJ contends that plaintiffs' cause of action was founded upon the Administrative Procedure Act, which authorizes the court only to "compel agency action unlawfully withheld or unreasonably delayed" or "set aside agency action" that is not supported by law. *See* 5 U.S.C. § 706. RAJ submits that, since there is no authority for the court to provide relief against private parties, the court's order to remit duties to the United States was erroneous and without authority.

### Discussion

RAJ's application for a three-judge panel raises an important question of first impression. The question presented is whether, pursuant to the authority conferred by statute, the chief judge may reassign a case to a three-judge panel after the judge to whom the case has been assigned has rendered a decision. The court holds that, although reassignment may be permissible after a decision has been entered, under the circumstances of this case, reassignment is not desirable, and the motion is denied.

The responsibility and authority of the chief judge to assign or reassign cases to individual judges of this Court, or to

three-judge panels of the Court, is found in 28 U.S.C. §§ 253(c) and 255(a).

Section 253(c) of Title 28 provides:
The chief judge, under rules of the court, may designate any judge or judges of the court to try any case and, when the circumstances so warrant, *reassign the case to another judge or judges.*

28 U.S.C. § 253(c) (1982) (emphasis added).

Section 255(a) provides:
Upon application of any party to a civil action, or upon his own initiative, the chief judge of the Court of International Trade shall designate any three judges of the court to hear and determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order; or (2) has broad or significant implications in the administration or interpretation of the customs laws.

28 U.S.C. § 255(a) (1982).

These statutory provisions are implemented by Rule 77(d) of the Rules of the Court of International Trade, which provides in pertinent part:

(2) *Assignment to Three-Judge Panel.* An action may be assigned by the chief judge to a three-judge panel either upon motion, or upon his own initiative, when the chief judge finds that the action raises an issue of the constitutionality of an Act of Congress, a proclamation of the President, or an Executive order; or has broad and significant implications in the administration or interpretation of the law.

. . . .

(4) *Reassignment.* An action may be reassigned by the chief judge upon the death, resignation, retirement, illness or disqualification of the judge to whom it was assigned, or *upon other special circumstances warranting reassignment.*

U.S.C.I.T. Rule 77(d)(2), (4) (emphasis added).

Section 254 of Title 28 specifies that, except as otherwise provided in 28 U.S.C. § 255, the judicial power of this Court shall

be exercised by a single judge. 28 U.S.C. § 254 (1982). In an exceptional case of constitutional or other broad significance, however, the chief judge may appoint a three-judge panel to hear and resolve the case. 28 U.S.C. § 255 (1982); *see Barnhart v. United States,* 5 CIT 201, 203–05, 563 F.Supp. 1387, 1389–90 (1983). The purpose of the three-judge panel is to secure a broader judicial representation, and a more extensive collegial consideration of those cases which present the most important issues before the Court. *See* H.R.Rep. No. 1067, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 3188, 3200–01. As previous opinions of this Court have explained, the decision to assign an action to a three-judge panel lies within the sound discretion of the chief judge. *E.g., Barnhart v. United States,* 5 CIT 201, 204–05, 563 F.Supp. 1387, 1390 (1983); *Farr Man & Co. v. United States,* 1 CIT 104, 106 (1980); *see also SCM Corp. v. United States,* 79 Cust.Ct. 163, 165–66, CRD 77–6, 435 F.Supp. 1224, 1227 (1977).

The statute expressly provides that the chief judge may, *"when the circumstances so warrant,* reassign [a] case to another judge or *judges."* 28 U.S.C. § 253(c) (1982) (emphasis added). The statute specifically provides for reassignment to "judges," in the plural, and thus contemplates reassignment to a three-judge panel in accordance with 28 U.S.C. § 255(a). The phrase, *"when the circumstances so warrant,"* requires that the chief judge make a considered judgment, in light of all the facts and circumstances of the case, whether the action should be reassigned. Since the circumstances are not specified in the statute, it is clear that this decision is committed to the sound discretion of the chief judge. Read in conjunction with 28 U.S.C. § 255(a), section 253(c) must be interpreted to authorize and justify reassignment from a single judge to a three-judge panel only in those cases which, in the discretion of the chief judge, raise important constitutional issues or have broad or significant implications.

■ Rule 77(d)(4) implements 28 U.S.C. § 253(c) by providing that the chief judge may reassign an action, among other reasons, upon "special circumstances warranting reassignment." The situations in which a judge is unable to continue to perform judicial duties in a case appear exhausted by the specific references in the rule to "death, resignation, retirement, illness or disqualification." The provision for reassignment upon "other special circumstances" authorizes the chief judge to reassign the case in extraordinary situations in which the ability of the assigned judge to perform need not be implicated. This provision of the rule, therefore, enables the chief judge to reassign a case to a three-judge panel when an action raises important constitutional issues or has broad or significant implications in the administration of the laws regulating international trade.

In addition to fostering a fuller judicial consideration of the case, a three-judge panel also promotes the national policy of uniformity, as set forth in Article I, Section 8 of the United States Constitution which mandates that "all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8; *see* Re, *Litigation Before the United States Court of International Trade,* 19 U.S.C.A. at VII (West Supp.1986). An important objective of Congress in enacting the Customs Courts Act of 1980 was to provide greater uniformity and consistency in the interpretation and application of the international trade laws. *See, e.g.,* H.R.Rep. No. 1235, 96th Cong., 2d Sess. 20, *reprinted in* 1980 U.S. Code Cong. & Ad.News 3729, 3731; 126 Cong.Rec. 27,056, 27,063 (1980) (remarks of Sen. DeConcini). By eliminating jurisdictional conflicts over the laws regulating international trade, and expanding the opportunities for judicial review, Congress sought to provide for greater certainty and stability in the law. The appointment of a three-judge panel ensures that the decision reached will reflect an institutional consensus, and thereby serves to further the statutory and constitutional man-

date of uniformity in the interpretation of the international trade laws.

In addition to settling the controversy between the parties, the judicial decision has precedential value. *See* Re, *Stare Decisis,* 79 F.R.D. 509 (1979). Thus, all final decisions and decisions granting or refusing a preliminary injunction must be supported by "a statement of findings of fact and conclusions of law; or ... an opinion stating the reasons and facts upon which the decision is based," 28 U.S.C. § 2645(a) (1982), and these decisions must be preserved and open to inspection. 28 U.S.C. § 257 (1982). The published opinions of this Court were intended to serve as valuable guides to the rights and obligations of the international trade community. This important statutory goal would be undermined if there were no mechanism for securing broad judicial representation and consideration in exceptional cases of far reaching significance. *Cf.* 28 U.S.C. § 46(c) (1982); Fed.R.App.P. 35(a) (providing for rehearing in banc by Courts of Appeal). Thus, Congress has conferred upon the chief judge the authority and responsibility to enable extensive collegial consideration of a case when it is determined to be necessary and in the public interest. *See* 28 U.S.C. § 255(a) (1982).

■ Of course, for reasons of judicial economy and efficiency, the authority to reassign should be used sparingly. Indeed, it may be stated that motions for reassignment to a three-judge panel, made after the case has been assigned to a single judge, will be viewed with disfavor. Motions for reassignment made after a single judge has rendered a decision face an even heavier burden. Certainly, the chief judge will not allow any party to engage in what may appear to be "judge shopping." Nevertheless, it is clear that reassignment to a three-judge panel is not precluded as a matter of law, and may be desirable in certain circumstances. For example, a judge to whom a case has been assigned may conclude that the issues presented are of such significance as to justify consideration by a three-judge panel, and may rec-

ommend to the chief judge that the case be reassigned to a three-judge panel.

■ The asserting of novel jurisdictional issues or other questions of first impression, without more, would not necessarily warrant consideration by a three-judge panel. As has been noted, in this Court, "cases of novel impression are almost commonplace," *Barnhart, supra,* 5 CIT at 205, 563 F.Supp. at 1391 (quoting *SCM Corp., supra,* 79 Cust.Ct. at 166, 435 F.Supp. at 1227), and "a single-judge court has on numerous occasions decided far-reaching questions affecting the court's jurisdiction," *American Air Parcel Forwarding Co. v. United States,* 4 CIT 150, 151 (1982) (quoting *United States v. Accurate Mould Co.,* 3 CIT 155, 157 (1982) ). For example, in this case, at the time of assignment, it appeared that the case would have affected the classification of only a limited number of entries during the brief three-month "grace period" that Customs had established. Thus, while the outcome of the case would be of great significance to the parties, there was no indication at that time that resolution of the issues presented would have significant implications that would have warranted consideration by a three-judge panel.

In this case, which is based on the Administrative Procedure Act, the single-judge court in fashioning a remedy assessed a money judgment against a private party in favor of the United States after liquidation. Whether this remedy is authorized by law and proper has broad and significant implications in the interpretation and administration of the customs laws. It cannot be questioned that the Court of International Trade possesses "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1982). Indeed, 28 U.S.C. § 2643(a) specifically provides that the court "may enter a money judgment ... for or against the United States in any civil action commenced under section 1581 or 1582 of [Title 28]." 28 U.S.C. § 2643(a) (1982). Nevertheless, it is a serious and important ques-

tion whether the court may fashion relief which, as the defendant-intervenors assert, is not specifically authorized, and which may conflict with a carefully crafted statutory scheme.

The question presented in this case is not one of jurisdiction. Rather, the question presented is whether, assuming that plaintiffs have stated a valid cause of action, there is legal authority for the specific remedy or relief which was granted by the single-judge court. It is not questioned that, in an action under the Administrative Procedure Act, the court may set aside or compel agency action. The crucial question presented, however, is whether the cause of action asserted authorizes a domestic party to obtain a money judgment in favor of the government after liquidation has become final.

Rule 1 of the Rules of this Court directs that the Rules be "construed to secure the just, speedy, and inexpensive determination of every action." Judicial economy and the expeditious resolution of the litigation are two factors that must be considered in determining whether to assign or reassign a case to a three-judge panel. *See, e.g., Barnhart, supra,* 5 CIT at 203, 563 F.Supp. at 1389; H.R.Rep. No. 1067, *supra,* 1970 U.S.Code Cong. & Ad. News at 3200. Indeed, in enacting 28 U.S.C. §§ 254 & 255, Congress recognized that the procedure under prior law which provided for intermediate review of the decision of a single judge by a three-judge panel in certain cases could be "an unnecessary and time-consuming step." H.R.Rep. No. 1067, *supra,* 1970 U.S.Code Cong. & Ad.News at 3200. Because reassignment of the case at this juncture would likely protract the ultimate disposition of the action, the action will not be reassigned.

In this case, the parties have raised a number of issues that may be subject to appeal. The question of the legality of the relief granted is only one of them, and it would violate the principles of sound judicial management to have a case litigated in a piecemeal fashion. Of course, any decision by a three-judge panel of this Court would be subject to appeal to the Court of Appeals for the Federal Circuit. Although the parties may not file a notice of appeal while a motion for rehearing is pending, there is no reason to believe that any party who feels aggrieved will not appeal any adverse judgment. Indeed, two of the parties in this case have already sought relief in the Court of Appeals for the Federal Circuit on two separate occasions. *See National Corn Growers Ass'n v. Baker,* Misc. Doc. No. 94 (Fed.Cir. Dec. 4, 1985) (unpublished order); *In re RAJ Chemicals, Inc.,* Misc.Doc. No. 119 (Fed.Cir. June 26, 1986) (unpublished order).

The single-judge court has entered a stay of judgment to maintain the status quo pending disposition of the motion for rehearing and disposition of the appeal. Hence, it is the determination of the Court that the interests of justice can best be served by having all issues finally resolved on appeal in one forum as expeditiously as possible. Since reassignment of this case at this stage of the litigation to a three-judge panel will not aid in the expeditious disposition of the action, and will delay final resolution, the motion for reassignment to a three-judge panel is denied.

Nothing in this opinion is intended or to be interpreted as expressing any view as to the merits of the litigation.