**SKW STICKSTOFFWERKE PIESTERITZ GmbH,**
Plaintiff,

v.

**The UNITED STATES, Defendant,**

and

**Agrium (US), Inc., Defendant–Intervenor,**

and

**Ad Hoc Committee of Domestic Nitrogen Producers, Defendant–Intervenor.**

Slip Op. 97–165.
No. 96–10–02398.

United States Court of International Trade.

Dec. 3, 1997.

Winthrop, Stimson, Putnam & Roberts, Christopher R. Wall, Mark A. Monborne, David S. Christy, Jr., Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Velta A. Melnbrencis, Assistant Director, U.S. Department of Justice, Civil Div., Commercial Litigation Branch, (Duane W. Layton, of counsel, Office of the Chief Counsel for Import Administration, U.S. Dep't of Commerce), for Defendant.

Junker & Thompson, P.C., Joel E. Junker, Lindsay T. Thompson, Seattle, WA, for Defendant–Intervenor Agrium (US), Incorporated.

Akin, Gump, Strauss, Hauer & Feld, L.L.P., Valerie A. Slater, Katherine M. Ho, Washington, DC, for Defendant–Intervenor Ad Hoc Committee of Domestic Nitrogen Producers.

### MEMORANDUM AND ORDER

WALLACH, Judge.

## I

### INTRODUCTION

Plaintiff SKW Stickstoffwerke Piesteritz GmbH ("SKWP") challenges the Department of Commerce's ("Commerce") decision in *Solid Urea From the German Democratic Republic: Termination of Changed Circumstances Review,* 61 Fed.Reg. 49436 (September 20, 1996) ("Termination"). SKWP claims that Commerce acted contrary to law when it terminated the Changed Circumstances Review as a result of the initiation of an Administrative Review. According to SKWP, once the Changed Circumstances Review was commenced, Commerce was obligated by statute and its own regulation to complete it. For the reasons discussed below, the Court holds that Commerce's decision to terminate the Changed Circumstances Review is reasonable and denies SKWP's Motion For Judgment On The Agency Record.

## II

## BACKGROUND

On July 14, 1987, Commerce published an antidumping duty order subjecting solid urea from what was then the German Democratic Republic ("GDR") to the assessment of antidumping duties and deposits of estimated antidumping duties. *Antidumping Duty Order; Urea From the German Democratic Republic*, 52 Fed.Reg. 26366 ("Antidumping Order"). Since the reunification of the GDR, a state-controlled, non-market economy country, and the Federal Republic of Germany ("FRG"), a democratically-governed, market-oriented economy, on October 3, 1990, Commerce has initiated three changed circumstances reviews of the Antidumping Order.

The purpose of the first changed circumstances review was "to examine the effect of unification on the antidumping duty order from the [GDR], specifically its applicability to post unification shipments of the subject merchandise from producers located in the pre-unification area of the Federal Republic." *Solid Urea From the German Democratic Republic; Initiation of Changed Circumstances Antidumping Duty Administrative Review*, 57 Fed.Reg. 5130 (Feb. 12, 1992). Commerce preliminarily determined that it should maintain the Antidumping Order on solid urea from the former GDR states but allowed entry of shipments from the remaining German states without subjecting them to the Order. *Solid Urea From the [GDR]; Preliminary Results of Changed Circumstances Review and Initiation of Changed Circumstances Antidumping Duty Administrative Review*, 60 Fed.Reg. 21067 (May 1, 1995) ("Preliminary Results"). The Final Determination is still pending.

In the Preliminary Results, Commerce found "that there is good cause for conducting a second changed circumstances review to calculate a new cash deposit rate using a market economy analysis...." *Id.* at 21067.

However, the second changed circumstances review was terminated because Commerce found that urea was not imported during that time period. *Solid Urea From the [GDR]: Termination of Changed Circumstances Review*, 61 Fed.Reg. 10563 (March 14, 1996) ("Prior Termination").

Commerce initiated the third changed circumstances review which SKWP is contesting here, to "calculate a new cash deposit rate using a market economy analysis for any shipments of solid urea from the [former GDR] occurring after May 1, 1995, and before May 31, 1996." *Solid Urea From the Former German Democratic Republic; Initiation of Changed Circumstances Antidumping Duty Review*, 61 Fed.Reg. 27049 (May 30, 1996) ("Changed Circumstances Review").[1]

Before Commerce completed its Changed Circumstances Review, however, the Ad Hoc Committee of Nitrogen Producers, petitioner in the original action and Defendant–Intervenor in this action, requested an administrative review of the Antidumping Order. As a result, Commerce initiated an administrative review covering shipments of solid urea by SKWP for the period of July 1, 1995 to June 30, 1996. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation*, 61 Fed. Reg. 42416, 42417 (Aug. 15, 1996) ("Administrative Review"). The purpose of the Administrative Review and the Changed Circumstances Review was precisely the same.

On September 9, 1996, Commerce transferred the administrative record from the Changed Circumstances Review to the record of the Administrative Review. Letter from Deputy Assist. Sec. Enforce. Group III to Winthrop, Stimson, Putnam & Roberts and Akin, Gump, Strauss, Hauer & Feld, L.L.P., Sept. 9, 1996, exh. 5 to Defendant's Mem. Shortly thereafter, Commerce terminated the Changed Circumstances Review, stating:

---

**1.** At that time, Commerce said that an administrative review might be forthcoming, and that if one was sought it would result in the termination of the Changed Circumstances Review. Letter from Acting Assist. Sec. for Import Admin. to Akin, Gump, Strauss, Hauer & Feld, L.L.P., May 22, 1996, Exh. 2 to Defendant's Mem. In Opp. To

Plaintiff's Mot. For Jdgmt Upon The Admin. Record ("Defendant's Mem."). Commerce's rationale for initiating the Changed Circumstances Review was "based upon the need to issue promptly an antidumping questionnaire in response to the recent shipment of German urea...." *Id.*

The purpose of the [changed circumstances] review was to calculate a new cash deposit rate using a market-economy analysis for any shipments of solid urea from the five German states ... that formerly constituted the GDR ... occurring after May 1, 1995 and before May 31, 1996. On August 15, 1996, the Department initiated, based upon receipt of a timely request from the Ad Hoc Committee of Domestic Nitrogen Producers (hereinafter "the Petitioners"), an administrative review covering shipments by [SKWP] from the Five States for the period of July 1, 1995 to June 30, 1996. Because the time periods covered by the changed circumstances review and the administrative review substantially overlap, and because the Department would conduct essentially the same analysis in both reviews, the Department is now terminating the changed circumstances review.[2]

Termination, 61 Fed.Reg. at 49436. Subsequently, Commerce determined a dumping margin of 0.00 percent for SKWP. *Final Results of Antidumping Duty Administrative Review of Solid Urea From the Former [GDR]*, 62 Fed.Reg. 61271, 61276 (Nov. 17, 1997).

## III

## DISCUSSION

### A

### Standard Of Review

"The court shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law...." 19 U.S.C. § 1516a(b)(1)(B) (1994). In reviewing an agency's construction of the statute that it administers, the Court's initial inquiry is to determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If Congress

has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. at 2781–82.

■ Consequently, "[t]he court will defer to the agency's construction of the statute as a permissible construction if it 'reflects a plausible construction of the plain language of the statute[s] and does not otherwise conflict with Congress' express intent.'" *Torrington Co. v. United States*, 82 F.3d 1039, 1044 (Fed.Cir.1996) (citations omitted). "This restricted standard of review is reflective of the legislative intent that courts afford considerable deference to Commerce's expertise in administering the antidumping law." *GMN Georg Muller Nurnberg AG v. United States*, 15 CIT 174, 178, 763 F.Supp. 607, 611 (1991).

### B

### Commerce Acted Reasonably When It Terminated The Changed Circumstances Review

Section 751(b) of the Tariff Act of 1930 provides:

Whenever [Commerce] ... receives information ... which shows changed circumstances sufficient to warrant a review [of an existing antidumping duty order], [Commerce] shall conduct a review of the determination....

19 U.S.C. § 1675(b)(1) (1994). The statute also provides that if Commerce receives a request for review of an antidumping duty order from an appropriate party on an appropriate date, Commerce will perform a review and determine the amount of any antidumping duty. 19 U.S.C. § 1675(a)(1) (1994).

■ Thus, the statute allows Commerce to initiate a review of an antidumping duty order based on changed circumstances or on the request of a party. However, it neither addresses nor resolves what should occur

---

**2.** The actual entry under review concerns a single sale made to the United States in April 1996. Consequently, although the two reviews technically cover different time periods, they both cov-

er the same sale. Further, both reviews cover the same six-month period of home market sales starting January 1, 1996.

when two reviews have been initiated, one as a changed circumstances review and the other an administrative review at the request of a party.

█ The Court must decide whether Commerce's decision to terminate a changed circumstances review when it initiated an administrative review at the request of a party is reasonable. As discussed in detail below, the Court finds Commerce's decision reasonable because the Administrative Review has the same purpose and covers the same producer, merchandise and sales covered by the Changed Circumstances Review.

**1**

**The Statute Does Not Require Commerce To Complete The Changed Circumstances Review**

SKWP argues that once Commerce initiated the Changed Circumstances Review, the plain language of the statute required Commerce to complete that review. According to SKWP, the reasonableness of Commerce's actions is not at issue because the statute is clear and no interpretation was necessary. SKWP points to the language of the statute which states that Commerce "shall conduct" a changed circumstances review for support, arguing that it is mandatory. *See supra* 19 U.S.C. § 1675(b)(1) (1994).

█ Beginning, as we must, with the language of the statute, it is settled that "Congress" use of the term 'shall,' in and of itself, does not necessarily require the conclusion that mandatory action is intended. Rather, "[a]s against the government, the word 'shall,' when used in statutes; is to be construed as 'may,' unless a contrary intention is manifest." *Barnhart v. United States*, 5 CIT 201, 203, 563 F.Supp. 1387, 1389 (1983). Unless the statute includes "consequential language" explaining the repercussions to Commerce's failure to comply with the "shall" language, the statute is directive and not mandatory. *Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563, 566 (Fed.Cir. 1989); *see also Sharp Corp. v. United States*,

13 CIT 951, n. 4, 725 F.Supp. 549, n. 4 (1989) ("It is true ... that 19 U.S.C. § 1675(a) mandates completion of § 751 reviews within a twelve-month period after the notice of tentative revocation has been published ... but that timetable has been held to be directory and not mandatory because no prohibition or adverse consequences are imposed for failing to meet the deadline.").[3]

A review of the statute does not reveal any "consequential action" to Commerce's failure to complete a changed circumstances review. Indeed, the statute itself provides for discretionary action on the part of Commerce in determining whether to initiate a review based on changed circumstances. The language "sufficient to warrant", for example, lets Commerce, in its discretion, determine whether a review based on changed circumstances is necessary. *See* 19 U.S.C. § 1675(b)(1) (1994). Since the statute provides for discretionary action, Commerce may decide to terminate such a review. The statute simply does not mandate the conclusion of a changed circumstances review once it has been initiated.

Further, the statute does not address the situation before the Court, *i.e.*, whether Commerce may terminate a changed circumstances review when an administrative review has been initiated. Since Congress has not directly spoken on this issue, the Court must determine whether Commerce's interpretation of the statute is reasonable. Commerce decided that Congress did not intend it to conduct two reviews of the same merchandise for the same purpose, resulting in duplicate proceedings which expend Commerce's limited resources and may result in inconsistent findings. That interpretation of the statute is reasonable.

Finally, if Commerce's normal practice was in contravention of the statute, Commerce's actions might be questionable. *See, e.g., Sec. and Exch. Comm'n v. Sloan*, 436 U.S. 103, 118, 98 S.Ct. 1702, 1711–12, 56 L.Ed.2d 148 (1978). In this case, however, there are numerous examples of Commerce's long-standing, reasonable interpretation of the statute

---

**3.** In any case, the statute simply does not mandate completion of a review. It requires that the review be conducted, not that it be completed.

The review here was conducted to the point where Commerce reasonably determined it should be terminated.

as allowing it to terminate changed circumstances reviews in its discretion. *See, e.g.,* Prior Termination, 61 Fed.Reg. 10563 (terminated because there were no shipments to review during the specified period); *Corrosion–Resistant Carbon Steel Flat Products from Canada: Termination of Antidumping Changed Circumstances Administrative Review,* 59 Fed.Reg.1927, 1928 ( Jan. 13, 1994) (party requesting the review asked for its termination); *Notice of Termination of Changed Circumstances Review: Certain Cut–to–Length Carbon Steel Plate From Poland,* 58 Fed.Reg. 65964 (Dec. 17, 1993) (terminated because, *inter alia,* sole respondent failed to respond to questionnaire).

That "shall conduct" language of the statute is directory rather than mandatory, coupled with the statute's silence on how Commerce should handle a simultaneous changed circumstances review and administrative review, leads to the determination that Commerce acted reasonably in terminating the Changed Circumstances Review.

**2**

### The Regulation Does Not Require Commerce To Complete The Changed Circumstances Review

19 C.F.R. § 353.22(f) (1996) provides that Commerce, once it finds that "changed circumstances sufficient to warrant a review exist", will, *inter alia:*

\*    \*    \*    \*    \*    \*

(iv)   Issue preliminary results of review based on the available information that include the factual and legal conclusions on which the preliminary results are based and any action the Secretary proposes based on the preliminary results;

\*    \*    \*    \*    \*    \*

(viii) Not later than 270 days after the date of the Secretary's initiation of the review, issue final results of review that include the factual and legal conclusions on which the final results are based and any action . . .

that the Secretary will take based on the final results; . . . .

19 C.F.R. § 353.22(f) (1996).

■ SKWP claims that Commerce was required by its own regulation to complete the Changed Circumstances Review. For the same reasons discussed above, SKWP's argument fails because Commerce reasonably interpreted its regulations as allowing it to terminate the Changed Circumstances Review in its discretion.

**C**

### SKWP Did Not Suffer Any Prejudice When Commerce Terminated The Changed Circumstances Review

■ The statute allows Commerce to revoke an antidumping duty order after an administrative review or a changed circumstances review if Commerce decides revocation is warranted. 19 U.S.C. § 1675(d)(1) (1994). Commerce's regulations allow for revocation when three consecutive administrative reviews have resulted in zero dumping margins, and it is unlikely that the exporters will resume sales at less than fair value. *See* 19 C.F.R. § 353.25(a) (1996). Commerce has not implemented any regulations concerning revocation after a review based on changed circumstances. Thus, Commerce may decide to revoke an antidumping duty order after only one changed circumstances review. It is based on this possibility that SKWP claims that it suffered prejudice when Commerce terminated the Changed Circumstances Review.

The Court is not persuaded by SKWP's argument because the Changed Circumstances Review at issue had the sole purpose of determining a new cash deposit rate, and revocation is not here an issue. At oral argument, held on September 19, 1997, the parties informed the Court that the record in this case did not contain information specifically concerning the effect of the reunification of Germany on the Antidumping Duty Order. Rather, the parties stated that the issue of reunification was fully briefed in the first Changed Circumstances Review. Thus, while the conclusion of this Changed Circumstances Review *may* be the basis for a revocation, it is highly unlikely that Commerce

would have revoked the Antidumping Order based on the record before it in this Review. Rather, if revocation did occur it would be based on Commerce's first Changed Circumstances Review. Accordingly, the Court concludes that SKWP suffered no prejudice from the termination of the Changed Circumstances Review.

## IV

### CONCLUSION

For the foregoing reasons, Commerce's termination of the Changed Circumstances Review is upheld and SKWP's Motion For Judgment On The Agency Record is denied.

### JUDGMENT ORDER

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED that SKW Stickstoffwerke Piesteritz GmbH's Motion For Judgment On The Agency Record is denied; and it is further

ORDERED, ADJUDGED AND DECREED that the U.S. Department of Commerce's actions in *Solid Urea From the German Democratic Republic: Termination of Changed Circumstances Review*, 61 Fed.Reg. 49436 (Sept. 20, 1996), be, and hereby are, sustained.